MICHAEL BAILEY
United States Attorney
District of Arizona
BILL C. SOLOMON
Assistant U.S. Attorney
State Bar No. 020012
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Facsimile: (602) 514-7696
E-Mail: William.Solomon@usdoj.gov
*Attorneys for the United States of America*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Petitioner,

v.

Eugenii Glushchenko,

Respondent.

No. CV-19-04678-PHX-SPL (JFM)

**STATUS REPORT**

On July 10, 2019, this Court authorized the Department of Homeland Security (DHS), through component medical authority, to perform involuntary medical evaluations, and involuntary blood draws and weight checks of Respondent Eugenii Glushchenko. (Doc. 5.) This Court further authorized DHS to restrain Respondent in the event he were to resist examinations, and to involuntarily administer hydration, nutritional supplements, and urinary catheters if necessary to preserve Respondent's life. (*Id*.) The United States submits this status report in compliance with this Court's order that it file a status report no later than 5:00 p.m. today to inform the Court's decision on setting a status hearing or a hearing regarding the continuation of the TRO or a potential preliminary injunction. (*Id*.)

Set forth below are the pertinent details of the events that have transpired since this Court issued the Temporary Restraining Order (TRO) (Doc. 5) on July 10, 2019.

1. A copy of the TRO (Doc. 5) was personally served on Mr. Glushchenko at the Eloy Detention Center on July 10, 2019, at approximately 8:30 p.m. *See* Exhibit 1 (Declaration of Dale A. Welsh, Physician Assistant (PA Welsh)) at ¶ 5.

2. On July 11, 2019, a copy of each document filed in this matter (Docs. 1-6) was personally served on Mr. Glushchenko at the Eloy Detention Center.

3. Following service of the TRO upon Mr. Glushchenko, Mr. Glushchenko was provided with information on the medical necessity to eat and drink to preserve his health and the medical risks incurred during a hunger strike. Decl. of PA Welsh at ¶ 5.

4. PA Welsh personally explained to Mr. Glushchenko DHS's concerns regarding his condition and the medical risks involved with a continued lack of appropriate nourishment. Mr. Glushchenko was also informed that involuntary treatment would be initiated. Decl. of PA Welsh at ¶ 5.

5. On July 11, 2019, when Mr. Glushchenko continued to refuse to permit staff to obtain vital signs and blood work, and to provide intravenous hydration, it became necessary to use soft restraints to involuntarily obtain vital signs and blood work. Mr. Glushchenko was given two liters of normal saline intravenously. These procedures, which occurred without injury or complication and took approximately 2.5 hours to complete. Mr. Glushchenko refused nutrition and further assessments the remainder of the day. Decl. of PA Welsh at ¶ 6.

6. On July 12, 2019, Mr. Glushchenko refused to voluntarily consume nutrition or to allow staff to obtain vital signs. Due to his very emaciated physical status, medical personal deemed it necessary to initiate involuntary feeding. It was again necessary to use soft restraints, this time to pursue involuntary feeding via nasogastric tube (NGT). A NGT was initially inserted into Mr. Glushchenko's stomach, but the NGT was aborted because Mr. Glushchenko was able to dislodge the tube. At that point, Mr. Glushchenko was given the opportunity to voluntarily consume the nutritional supplement, but he refused. An additional attempt at NGT placement was then performed, but Mr. Glushchenko was again

able to dislodge the tube. With much coaxing, Mr. Glushchenko did eventually, very slowly, consume the required amount of nutritional supplement and water without the use of the NGT. He consumed a total of 230 calories of nutrition for the day. Mr. Glushchenko caused himself to have a bloody nose due to the removal of the NGT, but otherwise he suffered no injury or complication from the feeding procedures. Labs were also obtained without resistance. It took approximately two hours to complete the entire procedure. Decl. of PA Welsh at ¶ 7.

7. On July 13, 2019, Mr. Glushchenko allowed staff to take his vital signs overnight, but he continued to refuse to consume nutrition. Mr. Glushchenko was directed to consume the nutritional supplement voluntarily or NGT placement would again be performed. After the custody team was required to make a show of force at Mr. Glushchenko's door, he voluntarily consumed the required amount of nutritional supplement; he did so very slowly, however, requiring ongoing coaxing by the medical staff. At the conclusion of the feeding, which took approximately four hours, Mr. Glushchenko had consumed a total of 460 calories of nutrition for the day. Mr. Glushchenko refused further meals, water, and vitals the remainder of this day. Decl. of PA Welsh at ¶ 8.

8. On July 14, 2019, Mr. Glushchenko voluntarily consumed half of the required nutritional supplement, but then stated he no longer believed the Court order was in effect. Only after the security team conducted another show of force at his door did Mr. Glushchenko voluntarily consume the rest of the required daily supplement. As on the previous day, however, he consumed the nutritional supplement by taking very small sips. After three hours of constant coaxing from the medical staff to voluntarily consume the supplement or face NGT placement, Mr. Glushchenko consumed 460 calories of nutrition for the day. Although he consented to having staff give him a sponge bath, he refused further meals on this day. Decl. of PA Welsh at ¶ 9.

9. Today, July 15, 2019, Mr. Glushchenko voluntarily consumed the required daily amount of nutritional supplement quite quickly, after a verbal directive was given.

He consumed 1,050 calories total today. He refused to be weighed today. Although Mr. Glushchenko remains too weak to ambulate due to severe emaciation, he is visibly noted to have more energy and is of sound mind. Decl. of PA Welsh at ¶ 10.

10. While Mr. Glushchenko has voluntarily consumed the nutritional supplement, he has done so only after prolonged coaxing and repeated warnings that involuntary feeding would be necessary if he did not comply on his own. In light of Mr. Glushchenko's continued refusal to allow his weight to be checked and the need to spend significant amounts of time coaxing him to drink the supplement or face involuntary feeding, it is the opinion of medical personnel that it remains necessary to have the involuntary treatment order in effect to provide Mr. Glushchenko the necessary incentive to consume nutrition. Medical personnel also believe the order is medically necessary in order to continue to be able to perform involuntary medical monitoring and examinations and to provide involuntary hydration and nutrition until Mr. Glushchenko chooses to end his hunger strike. Decl. of PA Welsh at ¶¶ 11-12.

11. DHS expects that Mr. Glushchenko will remain in detention for approximately four more weeks, until he will be removed to Russia. Medical personnel request that the involuntary treatment order remain in place in the interest of optimizing Mr. Glushchenko's nutritional status to prepare for his journey to Russia and to ensure his physical wellbeing. Decl. of PA Welsh at ¶ 13.

12. With respect to continued efforts to remove Mr. Glushchenko from the United States, DHS has contracted for a special air ambulance charter to effect Mr. Glushchenko's lawful removal from the United States. Due to security concerns, DHS cannot disclose the exact date of the charter flight, but the removal is expected to occur within the next four weeks. The special air ambulance charter will not only address Mr. Glushchenko's unwillingness to voluntarily board a commercial removal flight, but it will also allow DHS to safely remove Mr. Glushchenko from the United States in his current medical condition. *See* Exhibit 2 (Supplemental Declaration of Jason Ciliberti, Assistant Field Office Director of the Eloy Detention Center) at ¶ 3.

Respectfully submitted the 15th day of July, 2019.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/Bill C. Solomon*
BILL C. SOLOMON
Assistant U.S. Attorney
*Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. I further certify that I mailed a copy of the foregoing First Class Mail addressed to the following CM/ECF non-registrants:

**Eugenii Glushchenko** (Axxx xxx 460)
Eloy Detention Center
1705 E. Hanna Rd.
Eloy, AZ 85131
*Respondent*

*s/ Lauren M. Routen*
United States Attorney's Office