**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **UNITED STATES** | § No. CV-19-04678-PHX-SPL (JFM) |
| Plaintiff, | § |
| v. | § |
| Glushchenko, Eugenii | § |
| Defendant. | § |

**DECLARATION OF DALE WELSH, PA-C**

In accordance with 28 U.S.C. § 1746, I, Dale Welsh, PA-C, make the following unsworn declaration, under penalty of perjury, pertinent to the above-styled and numbered cause:

1. I am a commissioned officer in the U.S. Public Health Service currently detailed to the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), ICE Health Service Corps (IHSC). I provide medical care to detainees being held in the custody of ICE.

2. I serve as a Physician Assistant at the Eloy Detention Center in Eloy, Arizona. I have been assigned to this facility since March 2019. I have been a Physician Assistant since September 2011, and I am licensed by the state of Arizona to practice medicine. All care for this patient has been coordinated and reviewed with concurrence from Daren R. Mealer, MD, MPA, FAAFP, IHSC Western Regional Clinical Director, who is based at the ICE – Office of Enforcement and Removal Operations Seattle Field Office in Seattle, Washington. Additional concurrence is received from Eloy Acting Clinical Director CAPT Luzviminda Peredo-Berger, MD who is based in Port Isabel, Texas.

3. I make this declaration upon a review of Mr. Eugenii Glushchenko's medical record, and my examination and treatment of Mr. Glushchenko.

4. This affidavit is made to provide the U.S. District Court, District of Arizona in the above referenced cause of action an update regarding Mr. Glushchenko's status after issuing an order permitting involuntary medical monitoring, hydration, and feeding on July 10, 2019.

5. Mr. Glushchenko was served the involuntary treatment order on July 10, 2019 at approximately 8:30 p.m. and again on July 11, 2019 at approximately 10:00 a.m. He refused to end his hunger strike or drink fluids. Mr. Glushchenko was provided with information on the medical necessity to eat and drink to preserve

1

his health and the medical risks incurred during a hunger strike. I personally explained to Mr. Glushchenko our concerns regarding his condition and the medical risks involved with a continued lack of appropriate nourishment. He was informed that involuntary treatment would be initiated.

6. On July 11, 2019, Mr. Glushchenko refused to permit staff to obtain vital signs and blood work and to provide intravenous hydration. Soft restraints were necessary to involuntarily obtain vital signs and blood work. Mr. Glushchenko was given two liters of normal saline intravenously. These procedures occurred without injury or complication and took approximately 2.5 hours to complete. Mr. Glushchenko refused nutrition and further assessments the remainder of the day.

7. On July 12, 2019, Mr. Glushchenko refused to voluntarily consume nutrition or to allow staff to obtain vital signs. Due to his very emaciated status, the decision to initiate involuntary feeding was determined to be necessary. Soft restraints were necessary to pursue involuntary feeding via nasogastric tube (NGT). An NGT was inserted to his stomach; however, Mr. Glushchenko was able to dislodge the tube and the NGT was aborted. He was given the opportunity to voluntarily consume the nutritional supplement, but he refused. An additional attempt at NGT placement was performed; however, Mr. Glushchenko was able to dislodge the tube again. With much coaxing, Mr. Glushchenko did eventually, very slowly, consume the required amount of nutritional supplement and water without the use of the NGT. He did cause himself to have a bloody nose due to the removal of the NGT but otherwise suffered no injury or complication from the procedures. Labs were obtained without resistance. The procedure took approximately two hours to complete. He consumed a total of 230 calories of nutrition for the day.

8. On July 13, 2019, Mr. Glushchenko allowed vital signs overnight. Mr. Glushchenko continued to refuse to consume nutrition. Mr. Glushchenko was given directive to consume nutritional supplement voluntarily or else NGT placement would be performed. Show of force with the custody team at his door was necessary due to refusing nutrition. Mr. Glushchenko voluntarily consumed the required amount of nutritional supplement; however, he did so very slowly and required ongoing coaxing by the medical staff. The feeding took approximately four hours, and he consumed a total of 460 calories of nutrition for the day. Mr. Glushchenko refused further meals, water, and vitals the rest of this day.

9. On July 14, 2019, Mr. Glushchenko voluntarily consumed half of the required nutritional supplement, but then stated he no longer believed the Court order was in effect. A show of force with the security team at his door was done. He voluntarily consumed the rest of the required daily supplement; however, he consumed the nutritional supplement taking very small sips taking three hours total and constant coaxing from the medical staff to voluntarily consume it or else an NGT would be pursued. He consented to having staff give him a sponge bath.

2

He consumed 460 calories of nutrition for the day. He refused further meals on this day.

10. On July 15, 2019, Mr. Glushchenko voluntarily consumed the required daily amount of nutritional supplement quite quickly after a verbal directive was given. He consumed 1,050 calories total today. He refuses to be weighed. Mr. Glushchenko is still too weak to ambulate due to severe emaciation; however, he is visibly noted to have more energy and is of sound mind.

11. While Mr. Glushchenko has voluntarily consumed the nutritional supplement, this has required prolonged coaxing and repeated warnings that involuntary feeding would be necessary if he did not comply on his own. In light of Mr. Glushchenko's continued refusal to allow his weight to be checked and the need to spend significant amounts of time coaxing him to drink the supplement or else submit to involuntary feeding, it is my professional opinion that it is necessary to have the involuntary treatment order continue to be in force to provide the necessary incentive for Mr. Glushchenko to consume nutrition.

12. IHSC Deputy Medical Director Philip Farabaugh, MD and Acting Clinical Director CAPT Luzviminda Peredo-Berger, MD have discussed and guided all treatment to date with me for Mr. Glushchenko's care and concur it is medically necessary to continue to have the ability to perform involuntary medical monitoring and examinations and provide involuntary hydration and nutrition until Mr. Glushchenko chooses to end his hunger strike.

13. Mr. Glushchenko is expected to have approximately four more weeks in detention before he will be removed to Russia. In the interest of optimizing his nutritional status to prepare for this journey, I request continuance of the involuntary treatment order to ensure his physical wellbeing.

Executed this 15th day of July 2019.

LCDR Dale Welsh, PA-C
Clinical Physician Assistant
ICE Health Service Corps
United States Public Health Service

3