# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Petitioner,<br><br>v.<br><br>Eugenii Glushchenko,<br><br>Respondent. | No. CV-19-04678-PHX-SPL (JFM)<br><br>**ORDER** |

On July 19, 2019, a hearing on preliminary injunction was consolidated with the merits in this action and held pursuant to Rule 65 of the Federal Rules of Civil Procedure. Based on the entire record, testimony, and arguments presented, the Court will enter a permanent injunction authorizing Petitioner to involuntarily administer nutrition and hydration to Respondent while he remains in custody pending his removal from the United States.

**I.      Background**

Respondent Eugenii Glushchenko is a native and citizen of Russia, who is currently detained in the Eloy Detention Center in Eloy, Arizona pursuant to a final order of removal. Respondent commenced a hunger strike on June 19, 2019, and since that date, has refused 63 meals, has lost 25% of his body weight, has become nonambulatory, and, based on the amount of time since his hunger strike began, could imminently develop permanent damage to his internal organs with the potential of death.

On July 10, 2019, the United States of America filed a Petition for Emergency Order (Doc. 1) and Motion for Temporary Restraining Order (Doc. 2) to involuntarily administer nutrition to Respondent. In light of the seriousness of the allegations and the risk of harm that could result by permitting Respondent to respond to the request for a Temporary Restraining Order, the Court entered a Temporary Restraining Order the same day authorizing the United States to involuntarily administer nutrition and hydration to Respondent and perform involuntary medical examinations if necessary to preserve his life. (Doc. 5.) The United States filed a status report on July 15, 2019, indicating that at times between July 10 and July 15 Respondent continued to refuse nutrition, necessitating involuntary administration of nutrients on two occasions. The United States requested that the Court continue its injunction authorizing the continued involuntary administration of nutrition and medical monitoring.

The Court extended the Temporary Restraining Order, ordered further briefing, and set a preliminary injunction hearing to determine whether a further injunction should issue and heard oral argument and testimony on July 19, 2019. The parties agreed to consolidate the preliminary injunction hearing with the merits under Federal Rule of Civil Procedure 65(a)(2).

**II.     Legal Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

The parties do not agree on what standard should apply in this context because Respondent is a civil immigration detainee and not a prisoner. While there does not appear to be a Ninth Circuit case addressing involuntarily feeding a civil detainee in immigration custody, the weight of authority applies the standard articulated in *Turner v. Safely*, 482 US 78 (1987). *See Aamer v. Obama*, 742 F.3d 1023, 1038–39 (D.C. Cir. 2014) (detainees at Guantanamo Bay were not likely to succeed on their claims that involuntary feeding violated their First Amendment rights or their substantive due process right to refuse unwanted medical treatment); *Department of Homeland Security v. Ayvazian*, 2015 WL 5315206 (S.D. Fl. Sep. 11, 2015) (employing the *Turner* test and finding that involuntarily feeding a detainee does not violate his constitutionally protected rights or free speech or the right to refuse unwanted medical treatment); *In re Soliman*, 134 F. Supp. 2d 1238, 1253–54 (N.D. Ala. 2001), vacated as moot *Soliman v. United States*, 296 F.3d 1237 (11th Cir. 2002) (involuntarily feeding hunger-striking INS detainee did not violate First Amendment or his right to privacy); *In re Fattah*, No. 08-MC-164, 2008 WL 2704541, at *3–4 (M.D. Pa. July 8, 2008) (employing *Turner* analysis and finding that involuntarily feeding immigration detainee did not violate his constitutional rights).

Respondent argues that *Turner* is inapplicable because it is irreconcilable with the general proposition that a person "detained under civil—rather than criminal—process . . . is entitled to 'more considerate treatment' than his criminally detained counterparts." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). *See also Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8188563 (D. Ariz. Nov. 18, 2016), *affirmed by* 878 F.3d 710 (9th Cir. 2017). Instead, Respondent contends *Youngberg v. Romeo*, 457 U.S. 307 (1982), provides the proper standard, where the Supreme Court held that individuals have a constitutionally protected liberty interest to reasonably safe conditions of confinement and freedom from unreasonable bodily restraints. Although *Youngberg* has been employed to evaluate conditions of confinement in the civil detainee context, Respondent does not cite a single case applying it in the context of the United States's request to involuntarily feed a detainee. Nor has Respondent offered any reasoning as to

why the specific constitutional considerations identified in *Turner* are inadequate to evaluate and safeguard the interests of a civil detainee. As a result, based on the weight of authority, the Court will apply the *Turner* standard to the United States's request.

**III. Discussion**

    **A. Likelihood of Success on the Merits**

The first question is whether there is a valid, rational connection between the regulation and a legitimate governmental interest put forward to justify it. The United States offers two justifications: preserving the lives of those in its custody and maintaining security and discipline in the detention facility. There is a wealth of authority concluding that such interests are legitimate and justify involuntary feeding of hunger-striking inmates and detainees. *E.g., In re Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1998); *Garza v. Carlson*, 877 F.2d 14, 17 (8th Cir. 1989);

The second factor is whether there are alternative means of exercising the asserted constitutional right that remain available. Because Respondent is not intending to communicate a particular message with his hunger strike, this factor does not weigh in favor of either party. The Court must next consider whether and the extent to which accommodation of the asserted right will have an impact on detention staff, detainees, and the allocation of resources generally. The Court heard unrebutted testimony that caring for a hunger-striking detainee in rapidly declining health creates a burden on the United States' resources in the number of staff required to assist Respondent and in transporting him for further treatment because of his refusal to eat. There was also testimony that allowing Respondent to continue his hunger strike could undermine detainees' confidence in the treatment they receive or empower other detainees to engage in a hunger strike.

Finally, the Court must whether the regulation represents an exaggerated response to prison concerns. Under the circumstances, the Court finds that involuntarily feeding Respondent is not an exaggerated response to the harm presented by Respondent's hunger strike. In short, the United States has established success on the merits of its claim.

>>

### B. Irreparable Harm

The Court heard persuasive testimony that if Respondent refuses to voluntarily consume nutrition his condition will rapidly deteriorate, placing his life in danger. Because of the inherent irreparability in the loss of life and the resultant burden on the United States to employ extraordinary measures to care for Respondent, irreparable harm has been established.

### C. Balance of Hardships and Public Policy

Because the United States has shown serious questions going to the merits of its claim, he must also show that the balance of the hardship tips sharply in his favor and the other *Winter* factors are met. *Alliance for the Wild Rockies*, 632 F.3d at 1135. The balance of the hardships here—as evidenced by the danger Respondent faces if he refuses to eat or drink—tips sharply in the United States's favor, and it is in the public interest to order injunctive relief.

**IT IS THEREFORE ORDERED** granting a **permanent injunction** permitting the United States to perform involuntary medical examinations, involuntary blood draws, and weight checks of Respondent Eugenii Glushchenko and may restrain him if he resists those examinations, and may involuntarily administer hydration, nutritional supplements, or urinary catheters if necessary to preserve his life, until such time as Respondent discontinues his hunger strike or is removed from the United States.

**IT IS FURTHER ORDERED** the stay of removal entered on July 16, 2019 is **lifted**.

**IT IS FURTHER ORDERED** that this action is **dismissed** and the Clerk of Court must enter judgment accordingly.

Dated this 22nd day of July, 2019.

Honorable Steven P. Logan
United States District Judge